**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLEN ELLYN PHARMACY, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 19 cv 5919 |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| XSPIRE PHARMA, LLC, doing business as | ) | |
| Saver Express; | ) | |
| GENTEX PHARMA, LLC; | ) | |
| WRASER, LLC; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL**

Plaintiff Glen Ellyn Pharmacy, Inc. respectfully requests that this Court grant the Motion for Preliminary Approval of Settlement: (i) preliminarily certifying a class for settlement purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as Appendix A; and (iii) appointing Glen Ellyn Pharmacy, Inc. and Medicine to Go Pharmacies, Inc., as Class Representatives and Edelman, Combs, Latturner & Goodwin, LLC as class counsel. In support of this motion, Plaintiff states as follows:

1.      Plaintiff Glen Ellyn Pharmacy, Inc.,  filed the above-captioned lawsuit wherein it alleges that Defendants Xspire Pharma, LLC, doing business as Saver Express; Gentex Pharma, LLC; and Wraser, LLC ("Defendants") violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") and state law by sending unsolicited facsimile advertisements to Plaintiff and other members of the nationwide class that did not contain an opt out notice in the form required by 47 U.S.C. § 227.

2.      Counsel for Plaintiff and Defendants have reviewed and analyzed the legal and

1

factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3.      Based upon this review and analysis, and following extensive settlement negotiations taking place over several months, including a settlement conference with Magistrate Judge Cox, the Parties entered into the Settlement Agreement attached hereto as <u>Appendix A</u>.[1]

4.      The parties' desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

a.      <u>Class Certification</u>.  The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons and entities in the United States who were successfully sent faxes by or on behalf of Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser LLC on or about August 4, 2019, promoting the commercial availability or quality of their goods or services which did not contain an opt out notice as described in 47 U.S.C. § 227

Based on a review of their records, and following a reasonable investigation of available records and information, Defendants have confirmed that approximately 8,123 fax numbers are included on the list of recipients of relevant facsimile advertisements during the Class Period.

5.      <u>Settlement Recovery</u>. Defendants shall create a $800,000.00 Settlement Fund (hereinafter "the Settlement Fund").   The Settlement Fund will be distributed as follows:

a.      All costs of notice and administration expenses will be paid from the Settlement Fund and shall not exceed $30,000.00.

b.      The Settlement Fund less this amount constitutes the Net Settlement Fund.

---

[1]   All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

c.　　Subject to Court approval, $10,000.00 shall be paid to Glen Ellyn Pharmacy, Inc., and Medicine to Go Pharmacies, Inc. as Class Representative Awards. These amounts are in addition to their recoveries as class members and reflect an incentive award in recognition for services as class representatives as well as the statutory damages available. Specifically, $7,500.00 shall be paid to Plaintiff Glen Ellyn Pharmacy, Inc., and $2,500.00 shall be paid to Medicine to Go Pharmacies, Inc.

d.　　Plaintiff's counsel's attorney's fees must be approved by the Court. Plaintiff's counsel shall submit a request for attorney's fees in an amount not to exceed $256,666.67 or 1/3 of the Net Settlement Fund made available to the class.

e.　　If the deductions described in subparagraphs (a)-(d) are approved by the Court, the distributable Net Settlement Fund (no less than $503,333.33) will be divided *pro rata* among Settlement Class Members who timely submit a valid Claim Form per each unique fax number. ("Initial Distribution")

f.　　All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. If there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment $10.00 each, after payment of the costs of notice and administration, incentive awards, and payments to the Settlement Class Members who submit valid claims, then such remaining Settlement Funds will be distributed on a *pro rata* basis to those Settlement Class Members ("Second Distribution") Any undistributed amounts remaining in the Net Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient(s), to be recommended by the parties and approved by the Court.

6.　　<u>Class Notice</u>. The Settlement Agreement provides for notice by facsimile and U.S.

3

Mail. Specifically, the Settlement Class Administrator shall cause the Notice and Claim Form in the form of Exhibit 1 to Appendix A be sent to the facsimile numbers identified on the Fax List provided by Defendants. The Settlement Class Administrator shall make at least two additional attempts to transmit the notice by facsimile to those numbers where the initial transmission failed. In addition, the Claims Administrator shall also mail the Notice and Claim Form to the Settlement Class Members via first class mail to the address, if any, for the Settlement Class Member as contained in the Fax List. Prior to mailing, the Settlement Class Administrator will check each address against the United States Post Office National Change of Address Database prior to the mailing. The Claims Administrator shall take reasonable steps to attempt to forward any notices it mails to Settlement Class Members which are returned with a forwarding address.

Several courts both within and outside this District have approved the sending of notice by facsimile in TCPA class action settlements. *See e.g.*, C.E. Design, Ltd. v. King Supply Co., LLC, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc., 12 C 780 (N.D. Ill.)(*Dkt. No. 73*)(fax and publication notice); Able Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co., 12 C 5608 (N.D. Ill.) (*Dkt No. 90*)(fax notice); Dr. William P. Gress v. Northwood, Inc., 12 C 7278 (N.D. Ill.)(*Dkt. No. 38*)(fax and mail notice); Able Home Health, LLC v. Healthy Advice Commcn's, Inc., 12 C 3019 (N.D. Ill.)(*Dkt. No. 60*)(fax and mail notice); Richard Wade Architects, P.C. v. Eng'g Servs. and Prods. Co., 11 C 9251 (N.D. Ill.)(*Dkt. No. 58*)(fax notice); City Select Auto Sales, Inc. v. David Randall Assocs., Inc., 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014). Vandervort v. Balboa Capital Corp., SACV 11–1578–JLS (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014).

Settlement Class Counsel will also post the Notice (excluding the claim form), and the

Settlement Agreement (excluding exhibits) on the firm's website. Settlement Class Counsel and/or the Settlement Class Administrator shall provide any Settlement Class Member who contacts either of them and requests a copy of the Notice and/or the Claim Form with the claim form.

The Settlement Class Administrator will also create a website that allows for electronic submission of claim forms, and the website will also post the notice, claim form, the Preliminary Approval Order, Plaintiff's Fee Petition and this Settlement Agreement (excluding exhibits).

7.      <u>Class Members' Right to Opt Out</u>. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement.  Class members will have at least 60 days after the Settlement Class Administrator sends Notice to opt out of the Settlement Agreement.

8.      <u>Claim Form</u>.   In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a Claim Form which will be provided with the Notice sent via fax and U.S. Mail.  Settlement Class Members will be provided with the option to return a claim form online via a dedicated website created by the Settlement Class Administrator or via U.S. Mail. After the deadline for the receipt of claim forms expires, the Settlement Class Administrator will determine the number of valid Claim Forms received.

9.      <u>Class Members' Right to Object</u>.  Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Settlement Class Counsel and counsel for Defendant a written objection within the time period set by this Court.  Any member who objects to the Settlement Agreement may appear and be heard at the final approval hearing.

Class Members will have at least 60 days after the Settlement Class Administrator sends Notice to object to the Settlement Agreement.

10. Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

a. <u>Rule 23(a)(1)  --  Numerosity</u>.  Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40.  <u>Kulins v. Malco</u>, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); <u>Swanson v. American Consumer Industries</u>, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); <u>Cypress v. Newport News General & Nonsectarian Hosp. Ass'n</u>, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); <u>Riordan v. Smith Barney</u>, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-

29 sufficient); <u>Sala v. National R. Pass. Corp.</u>, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, Defendants have represented, and discovery has shown, that approximately 8,123 facsimiles were sent by or on behalf of Defendants, which Plaintiff asserts are unsolicited facsimile advertisements as defined in the TCPA. This plainly satisfies the numerosity requirement.

    b. <u>Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate</u>. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. <u>Blackie v. Barrack</u>, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. <u>McClendon v. Continental Group, Inc.</u>, 113 F.R.D. 39, 43-44 (D.N.J. 1986); <u>Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); <u>Spicer v. Chicago Board Options Exchange</u>, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); <u>Alexander Grant & Co. v. McAlister</u>, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." <u>Franklin v. City of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>Patrykus v. Gomilla</u>, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1)     Whether Defendants engaged in a pattern of sending unsolicited advertisements via fax;

(2)     Whether Defendants sent, or caused to be sent, the facsimiles at issue;

(3)     Whether Defendants thereby violated the TCPA

(4)     The manner in which Defendants compiled or obtained their list of fax numbers.

(5)     Whether Defendants thereby violated the ICFA.

The Settlement Class is defined in terms of all persons and/or entities who on or about August 4, 2019, were sent the facsimiles at issue in this case by Defendants.

Numerous courts have certified class actions under the TCPA. Holtzman v. Turza, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); CE Design Ltd. v. Cy's Crabhouse North, Inc., 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); Sadowski v. Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Transp. Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642 (W.D. Wash. 2007); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Airz. (App.) 94, 50 P.3d 844 (2002); Critchfield Physical Therapy v. Taranto Grp., Inc., 293 Kan. 285, 263 P.3d 767 (2011); Karen S.

<u>Little, LLC v. Drury Inns, Inc.</u>, 306 S.W.3d 577 (Mo. App. 2010).

       c.    <u>Rule 23(a)(3) – Typicality</u>.  Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may control even in the face of differences of fact.

<u>De La Fuente v. Stokely Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

      In the instant case, typicality is inherent in the class definition.  By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely they are persons and entities with facsimile numbers that, during the Class Period, were sent faxes by or on behalf of XSpire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser LLC.

       d.    <u>Rule 23(a)(4) -- Adequacy of Representation</u>.  The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992).

      The proposed Class Representative Plaintiffs have and will continue to fairly and adequately protect the interests of the class. They have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Counsel's qualifications are set forth in <u>Appendix B</u>.   Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

       e.    <u>Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of Resolving This Controversy</u>.   A class action is the superior method for the fair and efficient

adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." Brady v. LAC, Inc., 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

11. As set forth above, there are approximately 8,123 potential persons and/or entities

to whom/which Defendants' facsimile advertisements were sent. The total theoretical liability based on the approximate number of transmissions would exceed $4 million for a non-willful violation (8,123 x $500 = $4,061,500).

Prior to entering into the proposed Settlement Agreement, Class Counsel conducted written and oral discovery in order to determine the scope of Defendants' liability as well as the size of the putative class. Class Counsel has considered all of the information learned in arriving at a settlement amount that would most effectively compensate the class considering defendant's financial condition.

Plaintiffs' counsel also reviewed defendant's insurance policies. The policies at issues included specific exclusions related to claims brought pursuant to the Telephone Consumer Protection Act. Accordingly, Plaintiff negotiated a comprehensive settlement that confers the maximum possible economic relief to all class members.

12.      Counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

WHEREFORE, plaintiff respectfully requests that this Court enter an order in the form of Exhibit 2 to the Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Glen Ellyn Pharmacy, Inc. and Medicine to Go Pharmacies, Inc. as a Class Representatives and Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iii) directs the faxing and mailing of Class Notice Claim Form in the form of Exhibit 1 to the Settlement Agreement, and (iv) enjoins any member of the Settlement Class from commencing, prosecuting or continuing to pursue on behalf of a class any of the Released Claims, and (v) sets dates for submission of Claim Forms, Opt-Outs, appearances and objections, and schedules a hearing for

final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

*s/ Dulijaza Clark*
Dulijaza (Julie) Clark

Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

<u>**CERTIFICATE OF SERVICE**</u>

I, Dulijaza Clark, hereby certify that on April 5, 2021, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which shall send notification of such filing to all counsel of record.

s/ *Dulijaza Clark*
Dulijaza (Julie) Clark

Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

# APPENDIX A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLEN ELLYN PHARMACY, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 19 cv 5919 |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| XSPIRE PHARMA, LLC, doing business as | ) | |
| Saver Express; | ) | |
| GENTEX PHARMA, LLC; | ) | |
| WRASER, LLC; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## SETTLEMENT AGREEMENT

## RECITALS AND DEFINITIONS

1.      Parties.  Defendants Xspire Pharma, LLC, doing business as Saver Express; Gentex Pharma, LLC; and Wraser, LLC ("Defendants") and Plaintiffs Glen Ellyn Pharmacy, Inc. and Handicapable, Inc. d/b/a Medicine to Go Pharmacies, ("Plaintiffs") individually and as representatives of the  settlement class of persons defined below in paragraph 5 (the "Settlement Class"), enter into this  Settlement Agreement ("Settlement Agreement"). Plaintiffs and Defendants are collectively  referred to as the Parties.

2.      Nature of Litigation.  In this lawsuit, captioned *Glen Ellyn Pharmacy, Inc. v. Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC,* United States District Court, Northern District of Illinois, Eastern Division, docket number 19 C 5919, (the "Litigation"), Plaintiffs allege that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA")

1

and common law by sending unsolicited advertisements via facsimile to plaintiff and a nationwide class of individuals and entities.

3.    <u>Denial of Liability</u>.  Defendants deny violating the TCPA, ICFA and state law further deny any liability to Plaintiffs and the Settlement Class for the claims alleged. Defendants desire to settle the claims solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims, known or unknown, asserted or unasserted, actual or contingent, that have been or might have been asserted by the Plaintiff or the Settlement Class against them concerning the matters alleged in the complaint in the Litigation.

4.    "<u>Final</u>" means (a) the Court has entered a Final Approval Order, dismissing with prejudice the claims of all Class members (including Plaintiff) who do not properly exclude themselves, and (b) the date for filing an appeal from such Final Approval Order has expired or, if there is an appeal, the settlement and judgment has been affirmed in all material respects by the appellate court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

5.    "<u>Settlement Class Counsel</u>" means Edelman, Combs, Latturner & Goodwin, LLC.

6.    "<u>Settlement Class</u>" means all persons and entities who were successfully sent faxes by or on behalf of Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC on or about August 4, 2019, promoting the commercial availability or quality of their goods or services which did not contain an opt out notice as described in 47 U.S.C. § 227.

7.    "<u>Plaintiff</u>" means Glen Ellyn Pharmacy, Inc., and its heirs, successors, or assigns, or any other person acting on its behalf or for its benefit, or any person claiming through them.

8.    "<u>Released Parties</u>" means, Defendants and each of their respective parents, subsidiaries, affiliates and sister or sibling companies as of the time of the of the actions that gave

2

rise to the claims asserted in this Litigation, specifically including Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC, any of their predecessors and successors in interest, any of their insurers and any of its past, current and future owners, (including but not limited to Ford Mundy and Heath Wray), officers, directors, shareholders, partners, members, employees, affiliates and agents (each solely in their respective capacity as such). The Parties expressly agree that all of these persons and entities that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

9.      "Settlement Class Administrator" means the firm retained by Plaintiff with the consent of Defendants and approved by the Court to issue notice to the Settlement Class Members and to administer the settlement.

10.      "Settlement Class Member(s)" means Plaintiff and any member of the Settlement Class who does not opt out and is not otherwise excluded from the Settlement Class by the Court.

11.      "Released Claims" means any and all causes of action, suits, claims, or demands, in law or in equity, known or unknown, actual or contingent, asserted or unasserted, at this time or at the time the claims asserted in the Litigation arose, which Plaintiff or any other Settlement Class Members now have, did have, or may have in the future against the Released Parties, arising under any legal theory under the TCPA, whether or not alleged, and any similar legal theory related to or arising from the receipt of advertisements by facsimile. This includes, but is not limited to, all claims that were asserted or could have been asserted against the Released Parties in the Litigation, including TCPA claims, Illinois Consumer Fraud and Deceptive Practices Act claims, common law claims for conversion or trespass, or any other statutory or common law claim.

12.      "Unknown Claims" means claims that could have been raised in the Litigation and that the Class Members or any or all other Persons and entities whose claims are being released,

or any of them, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement.

13. <u>Plaintiff's Desire to Settle</u>. Plaintiff, individually and on behalf of the Settlement Class (as defined below), desires to settle its claims against Defendants, having taken into account through Plaintiff's counsel the risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this settlement and the likelihood that further litigation will be protracted and expensive. Plaintiff represents and warrants that it owned or leased the facsimile machine which received the faxes at issue in the Litigation at the time the faxes were received. The warranties and representations made in this Settlement Agreement survive the execution of this Settlement Agreement.

14. <u>Investigation</u>. Plaintiff's counsel states that they have investigated the facts and the applicable law. Based on the foregoing, and upon an analysis of the benefits afforded by this Settlement Agreement, Plaintiff's counsel considers it to be in the best interest of the Settlement Class to enter into this Settlement Agreement.

15. <u>Agreement</u>. In consideration of the foregoing and other valuable consideration, Plaintiff, Plaintiff's counsel and Defendants agree to settle the claims of the Plaintiff and the Settlement Class, the Released Claims, subject to the Court's approval, on the following terms and conditions.

**<u>TERMS</u>**

1. <u>Incorporation of Recitals and Definitions</u>. The recitals and definitions set forth above are incorporated into this Settlement Agreement.

4

2. <u>Effective Date</u>. The Settlement Agreement shall become effective (hereinafter the "Effective Date") upon the occurrence of all of the following: (a) the Court's entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u>, and (b) the expiration of five business (5) days after the date the Final Approval Order becomes Final.

3. <u>Certification of Settlement Class</u>. Solely for the purposes of settlement, the parties stipulate to the certification of the Settlement Class. The Parties agree to propose that Plaintiff shall be appointed class representative and that Daniel A. Edelman and Julie Clark of Edelman, Combs, Latturner & Goodwin, LLC shall be appointed Settlement Class Counsel. The Settlement Class shall be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Defendants do not consent certification of the Settlement Class for any purpose other than to effectuate this settlement of the Litigation. If this Settlement Agreement is not approved by the Court or is terminated pursuant to its terms or for any other reason, or is disapproved in a final order by any court of competent jurisdiction, (a) any order certifying the Settlement Class and all preliminary and/or final findings or stipulations regarding certification of the Settlement Class shall be automatically vacated upon notice to the Court of this Settlement Agreement's termination or disapproval; (b) this Litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither this Settlement Agreement, nor any of its Exhibits, nor any other associated settlement document may be used in seeking class certification; and (c) the Parties reserve all procedural or substantive rights as of the date of execution of this Settlement Agreement.

4. <u>Identification of Settlement Class Members</u>. Defendants represent that, based on a review of their records, and as has been shown in discovery, after conducting a thorough investigation of all available information and records, that approximately 8,123 facsimiles were

successfully sent by or on behalf of Defendants, which Plaintiff asserts are unsolicited facsimile advertisements as defined in the TCPA. Defendants or Settlement Class Counsel shall provide to the Settlement Class Administrator the list of the 8,123 recipients including the facsimile numbers, names and addresses, if available, associated with each unique fax number based upon its records (the "Fax List").

5. <u>Relief to Plaintiff and the Settlement Class</u>. Defendants shall create a $800,000.00 Settlement Fund ("Settlement Fund"). In no event, will Defendants be required to pay any amount beyond the $800,000.00 Settlement Fund. The following relief shall be provided to Plaintiff and the Settlement Class, subject to the Court's approval:

    a.    The entire Settlement Fund will be paid out and there will be no reverter to Defendants or their insurer(s);

    b.    Notice and administration expenses up to $30,000.00 will be paid from the Settlement Fund. The Settlement Fund less notice and administrative expenses is the Net Settlement Fund; and

    c.    After the notice and administration expenses are deducted from the Settlement Fund, the Net Settlement Fund shall be apportioned as follows:

        i.    Up to $7,500.00 shall be paid from the Settlement Fund to Plaintiff Glen Ellyn Pharmacy, Inc., in addition to its recovery as a class member, as an incentive award in recognition for its services as class representative and the statutory damages available;

        ii.    Up to $2,500.00 shall be paid from the Settlement Fund to Handicapable, Inc. d/b/a Medicine to Go Pharmacies,, in addition to its recovery as a class member, as an incentive award in recognition for its services as class representative and the statutory damages available ;

        iii.    Up to 1/3 of the Net Settlement Fund shall be paid from the Settlement Fund to Edelman, Combs, Latturner & Goodwin, LLC for attorney's fees and costs;

        iv.    Each member of the Settlement Class who submits a valid claim form will receive a check for a *pro rata* distribution of the Settlement Fund per unique fax number, after the amounts set forth in subsections (b), (c)(i) and (c)(ii) are distributed.

      v.     If there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment a minimum of $10 each, after the distributions identified in (b) and (c)(i)-(iii), then there shall be a Second Distribution to the Settlement Class Members.

      vi.    If there is not sufficient money remaining in the Net Settlement Fund to make a Second Distribution as provided in section (c)(iv) above, such fund remaining in the Net Settlement fund shall be distributed to a *cy pres* charity, consistent with paragraph 10 below.

6.      Any award of attorneys' fees and costs and incentive awards to the Class Representative Plaintiffs which are approved by the Court may be distributed to them within twenty-one (21) days following the Effective Date. Within thirty (30) days following the Effective Date, the Settlement Class Administrator shall distribute the Net Settlement Fund to the Settlement Class Members who have submitted timely and valid claim forms in accordance with this Settlement Agreement. In the event that (i) the Settlement Agreement is terminated pursuant to its terms; (ii) Defendants withdraw from the Settlement Agreement; (iii) the Settlement Agreement does not become effective; or (iv) the Final Approval Order is reversed, vacated, or modified in any material respect which is not mutually acceptable to the Parties, then Settlement Class Counsel or the Settlement Class Administrator shall return within three (3) business days following the event all funds paid or otherwise received from the Settlement Fund, less any reasonable costs (which shall not exceed $30,000.00) to Defendants' Counsel SmithAmundsen LLC, that were incurred by Settlement Class Counsel to issue notice to the Settlement Class Members

7.      Settlement Class Members shall have sixty (60) days to submit a claim form, to opt out, or object to the proposed settlement, after notice is initially sent by facsimile and U.S. Mail.

8.      Costs associated with notice, claims administration and distribution of settlement checks shall be paid from the Settlement Fund and shall not exceed $30,000.00.

9.     The settlement checks issued to the members of the Settlement Class for payment of claims under this Settlement Agreement (both Initial Settlement Payment and Second Distribution, if any) will be void after 60 days from the date of issuance. Any Settlement Class Member who does not deposit or negotiate the claim payment check issued to such Settlement Class Member within 60 days of the date of issuance of the settlement claim payment check, agrees that such Settlement Class Member rescinds and withdraws his, her or its claim for monetary compensation under this Settlement Agreement but remains a member of the Settlement Class and is bound by the terms of this Settlement Agreement.

10.     <u>Undistributed Settlement Funds</u>.  Within thirty (30) days after the last void date of all settlement checks (both Initial Settlement Payment and the Second Distribution, if any) issued to Settlement Class Members, the Settlement Class Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed amounts remaining in the Net Settlement Fund. Any such unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under this Settlement Agreement have been made shall be distributed to one or more *cy pres* charities selected by the parties, subject to court approval. In no event shall undistributed settlement funds shall revert to Defendants or their insurers.  Any distribution to the court approved *cy pres* recipient(s) shall occur no earlier than forty-five (45) days after expiration of the void dates on all settlement checks (both Initial Settlement Payment and the Second Distribution, if any) issued to Settlement Class Members.

11.     <u>Release</u>.  On the Effective Date, Plaintiff and the Settlement Class Members who have not opted out or been otherwise excluded from the Settlement Class shall be deemed to have fully and finally released and discharged the Released Parties from any and all liability for the Released Claims.

12.    This Settlement Agreement may be pleaded as a full and complete defense by the Released Parties to any action, suit or other proceeding that may be instituted or prosecuted with respect to the Released Claims.

13.    Without admitting that California law or the laws of any other state apply to this Settlement Agreement or that the release provided by Plaintiff and the Settlement Class is a general release, upon the Effective Date, Class Members and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Class Members and all other Persons and entities whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Class Members acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

14.     If this Settlement Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void and shall be without prejudice to the rights of the parties hereto and shall not be used in any subsequent proceedings in this or any other litigation, or in any manner whatsoever.

15.     <u>Attorneys' Fees, Notice Costs and Related Matters</u>.     The Settlement Class Administrator will administer the Net Settlement Fund for the benefit of the Settlement Class. Defendants will advance from the Settlement Fund to the Settlement Class Administrator, the reasonable costs of notice and settlement administration sufficient to pay for class notice and administration costs that will be reasonably incurred up to final approval five (5) days after entry of the Preliminary Approval Order. Settlement Class Counsel will request approval from the Court for attorneys' fees in an amount not to exceed 1/3 of the Net Settlement Fund, and shall file a motion with the Court seeking such relief no later than thirty (30) days prior to the deadline set by the Court in the Preliminary Approval Order to submit claims, opt out or object to the Settlement Agreement. Settlement Class Counsel shall make its motion for approval of attorneys' fees available on the settlement website contemporaneously with the filing of its motion. Settlement Class Counsel will not request additional fees or costs from Defendants or the Settlement Class other than the above-referenced sums.

16.     <u>Notice</u>.     Within 35 days of entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause the Notice and Claim Form in the form of <u>Exhibit 1</u> to be sent to the facsimile numbers identified on the Fax List. The Settlement Class Administrator shall make at least two additional attempts to transmit the notice by facsimile to those numbers where the initial transmission failed. The Claims Administrator shall also mail the Notice and Claim Form to the Settlement Class Member via first class mail to the address, if any, for the

10

Settlement Class Member contained in the Fax List. The Settlement Class Administrator will check each address against the United States Post Office National Change of Address Database prior to the mailing. The Claims Administrator shall take reasonable steps to attempt to forward any notices it mails to Settlement Class Members which are returned with a forwarding address.

Settlement Class Counsel will also post the notice in the form of Exhibit 1 (excluding the claim form), and this Settlement Agreement (excluding exhibits) on their firm's website. Settlement Class Counsel or the Settlement Class Administrator shall provide any Settlement Class Member who contacts either of them and requests a copy of the Notices and/or the Claim Form (Exhibit 1) with the claim form.

The Settlement Class Administrator shall create a website that allows for electronic submission of claim forms. Any website created by the Settlement Class Administrator may also post the notice, claim form, the Preliminary Approval Order, Plaintiff's Fee Petition and this Settlement Agreement (excluding exhibits). The Settlement Class Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement.

Settlement Class Counsel and/or the Settlement Class Administrator shall retain all documents and records generated during the administration of the settlement including records of notice given to Settlement Class Members, returned mail, records of undelivered mail, claim forms, and payment to Settlement Class Members for a period of one year following the issuance of the Final Approval Order, and the expiration of all deadlines for appeal therefrom. Defendants may inspect such documents, upon reasonable request by their counsel. The Class List and all other documents and records generated during the administration of the settlement shall be used solely for purposes consistent with notice and administration of this settlement and for no other purpose.

Defendants and their Counsel will be responsible for serving the required CAFA Notice within ten (10) days after the filing of the Preliminary Approval Motion.

17.     <u>Claim Validation</u>.  The Settlement Class Administrator shall match the fax number provided by the Settlement Class Member on a returned claim form to a fax number on the Fax List. The Settlement Claims Administrator shall also determine whether the claim is a duplicate, whether the claim form is signed and examine the claim form for completeness and validity. If the fax number does not match, then Settlement Class Counsel or the Settlement Class Administrator shall follow-up with the Settlement Class Member and inquire if such Settlement Class Member employed other fax numbers during the Class Period (to ascertain if any different fax number is a number on the Fax List), in an effort to determine whether the claim is a valid claim.

If the fax number or fax numbers provided on a claim form do not match a fax number on the Fax List, and the follow-up with the Settlement Class Member has not resolved the issue, Settlement Class Counsel or the Settlement Class Administrator shall disallow the claim. If a claim is deemed disallowed by the Settlement Class Administrator, the Settlement Class Administrator must communicate that disallowance of the claim to the Settlement Class Member and Settlement Class Counsel and allow Settlement Class Counsel an opportunity to investigate the basis for disallowing the claim. In the event the Parties disagree as to the validity of any claim form or whether to disallow a claim, then Settlement Class Counsel will present the disputed claim to the Court for resolution.

18.     a.      <u>Initial Settlement Payment</u>. Settlement Class Members submitting valid claim forms shall be paid a *pro rata* share of the Net Settlement Fund in accordance with this Settlement Agreement for each unique facsimile number.

        b.     <u>Second Distribution</u>.  If there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment $10.00 each, after payment of the costs of notice and administration, incentive awards, and payments to the Settlement Class Members who submit valid claims, then such remaining Settlement Funds will be distributed on a pro rata basis to those Settlement Class Members ("Second Distribution").

        c.     <u>W-9 Collection</u>. There is a possibility Settlement Class Members will recover more than $599.99, and such Settlement Class Members will be required to submit a W-9 form. The W-9 forms will be issued to Settlement Class Members by the Settlement Class Administrator as required within twenty-one (21) days after entry of the Final Approval Order and before any settlement checks are issued. Settlement Class Members will have thirty (30) days to respond to a request to complete a W-9 form. If a Settlement Class Member does not submit a W-9 form, the Settlement Class Administrator will deduct tax withholding from the settlement payment. If W-9 forms need to be collected, certain dates set forth in paragraphs 6, 9, and 10 are reset and calculated as follows: within thirty (30) days following the expiration of time for Settlement Class Members to complete a W-9 form, Settlement Class Counsel or the Settlement Class Administrator shall distribute the Settlement Fund to the Settlement Class Members who have submitted valid claims in accordance with paragraph 16; settlement checks to the Settlement Class Members will be void sixty (60) days from date of issuance; and within thirty (30) days following the void date on the Settlement Class Members' checks, any uncashed checks or unclaimed or undistributed funds, the disposition of which will be determined by the Court, will be disbursed.

19.  <u>Right to Object</u>.  Any Settlement Class Member may object to the Settlement Agreement and appear in person or through counsel, at his, her or its own expense. The deadline to object shall be set by the Court in the Preliminary Approval Order and the Parties shall propose that it be sixty (60) days after notice is sent. Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing a copy of the objection to Settlement Class Counsel and Defendants' Counsel. Any objection must include: (a) the name (or business name, if the objector is an entity), address, and fax number to which the allegedly unlawful fax was sent; (b) a statement of the objection to the Settlement Agreement; (c) an explanation of the legal and factual basis for the objection; and (d) documentation, if any, to support the objection.

20.  <u>Right of Exclusion</u>.  All Settlement Class members who properly file a timely written request for exclusion from the Settlement Class shall be excluded from the Settlement Class and shall have no rights as Settlement Class members pursuant to this Settlement Agreement. A request for exclusion must be in writing and state the name, address, and fax number to which the allegedly unlawful fax was sent of the person(s) or entity seeking exclusion. Each request must also contain a signed statement providing that: "I/we hereby request that I/we be excluded from the proposed Settlement Class in the Litigation." The request must be mailed to Settlement Class Counsel or the Settlement Class Administrator at the address provided in the notice and served by mail postmarked to Settlement Class Counsel or the Settlement Class Administrator on such date as set by the Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the notice, or that is not postmarked or received by Settlement Class Counsel or the Settlement Class Administrator within the time specified, shall be invalid and the person(s) serving such a request shall remain a Settlement Class member and shall be bound by the terms of the Settlement Agreement, if approved. Settlement

14

Class members shall have at least sixty (60) days from the date notice is sent to opt out of the Settlement.

21. <u>Preliminary Approval</u>. As soon as practicable after execution of this Settlement Agreement, Settlement Class Counsel shall file a Motion for Preliminary Approval of this Settlement Agreement and shall present such motion to the Court requesting the entry of a Preliminary Approval Order substantially in the form of <u>Exhibit 2</u> or in such other form which is mutually acceptable to the Parties.

22. <u>Final Approval</u>. Settlement Class Counsel shall file a memorandum in support of final approval of the settlement at least (fourteen 14) days prior to the date the Court sets for the final approval hearing. The Parties shall request the Court to enter a Final Approval Order substantially in the form of <u>Exhibit 3</u>, or in another form which is mutually acceptable to the Parties. Pursuant to the Class Action Fairness Act, the Final Approval Order shall not be entered until the expiration of at least ninety (90) days from the date the Preliminary Approval Order was entered. Entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u> or in another form which is mutually acceptable to the Parties is a condition precedent to this Settlement Agreement becoming fully effective. In the event a Final Approval Order substantially in the form of <u>Exhibit 3</u> or in another form which is mutually acceptable to the Parties is not entered then this Settlement Agreement shall be null and void and is rescinded and the Preliminary Approval Order and any other orders entered by the Court in connection with the settlement of this Litigation shall be vacated and the Parties shall be returned to the position they were in prior to the execution of this Settlement Agreement and this Litigation shall proceed as though this Settlement Agreement was never executed. In the event that Defendants or their insurers fail or refuse to make the payments, Defendants agree, that at the option of Settlement Class Counsel, the Final Approval Order may

be vacated pursuant to Fed. R. of Civ. Procedure 60(b), this Agreement shall be rescinded and this action shall be reinstated as if this Agreement never existed.

23.     The fact that the Court may require non-material changes to documents attached as Exhibits 1 through 3 does not invalidate this Settlement Agreement.

24.     Release of Attorneys' Lien.   In consideration of this Settlement Agreement, Settlement Class Counsel hereby waives, discharges and releases the "Released Parties," as defined in paragraph 8 of the Recitals and Definitions above, of and from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Settlement Class Counsel in connection with this Litigation, other than the amount awarded by the Court as specified above.

25.     Delivery of Settlement Fund.  Defendants or persons acting on their behalf shall within three (3) business days prior to the date if the final approval hearing, transfer to Class Counsel, Edelman, Combs, Latturner, & Goodwin, LLC, to be held in its Client Trust Account in trust for the Settlement Class, the Settlement Fund of $800,000.00 (less any amounts advanced for notice and administration costs).  Defendants shall have no further payment obligation to Plaintiff or the Settlement Class, and Defendants shall have no obligation or duty to monitor, supervise or control disbursements from the Settlement Fund. Settlement Class Counsel agrees to hold such funds in trust for the benefit of the Settlement Class and shall not disburse any funds from the Settlement Fund unless in accordance with this Settlement Agreement or as ordered by the Court.

26.     Applicable Law.  This Settlement Agreement shall be governed by and interpreted in accordance with the state law of the State of Illinois.

27.     Miscellaneous Provisions.  The Parties and their attorneys agree to cooperate fully with one another in seeking approval of this Settlement Agreement, and to use their best efforts to effect the consummation of this Settlement Agreement and the settlement provided for herein.

16

Whether or not this Settlement Agreement and the settlement contemplated hereunder are consummated, this Settlement Agreement and the proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of Defendants of any liability or wrongdoing whatsoever. This Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction. Further, neither this Agreement, the settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession or presumption that class certification is appropriate, except to the extent necessary to consummate this Agreement and the binding effect of the Approval Order.

28. <u>Benefit of this Settlement Agreement</u>.  This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiff, the Released Parties and Settlement Class Members, and each of their respective successors and personal representatives, predecessors, affiliates, heirs, executors and assigns. It is expressly understood by the Parties that the individuals or entities of the Released Parties that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

29. <u>Authority</u>.  The Parties hereby represent to one another that they have full power and authority to enter into this Settlement Agreement and carry out their obligations hereunder.

30. <u>Entire Agreement</u>.  Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement

17

may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Settlement Agreement and may not be amended, modified or changed orally.

      31.    <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by facsimile or e-mail shall be deemed legal and binding for all purposes.

      32.    <u>Headings</u>.  The headings in this Settlement Agreement are for convenience of reference only and are not to be taken to be a part of the provisions of this Settlement Agreement, nor to control or affect meanings, constructions or the effect of the same.

      IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered by their duly authorized representatives on the date last written below.

<b><u>SIGNATURE PAGE TO FOLLOW</u></b>

**PLAINTIFF**
*Glen Ellyn Pharmacy, Inc.*

By:_____

Its:_____

Dated:_____


**PLAINTIFF**
*Handicapable, Inc. d/b/a Medicine to Go Pharmacies*

By:_____

Its:_____

Dated:_____


**SETTLEMENT CLASS COUNSEL.**


_____
Daniel A. Edelman
Julie Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)


*Counsel for Plaintiff and the Settlement Class*


**DEFENDANT**
*Xspire Pharma, LLC.*
By:_____

Its:_____

Dated:_____


**DEFENDANT**
*Gentex Pharma, LLC*


By:_____

Its:_____

Dated:_____


**DEFENDANT**
*Wraser LLC*

By:_____

Its:_____

Dated:_____


**DEFENDANT'S COUNSEL**


_____
Eric. L. Samore
John C. Ochoa
SmithAmundsen LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312-894-3200

19

**PLAINTIFF**
*Glen Ellyn Pharmacy, Inc.*

By: _____

Its: PRESIDENT

Dated: 3/31/2021

**PLAINTIFF**
*Medince to Go Pharmacies, Inc.*

By: _____

Its: _____

Dated: _____


**SETTLEMENT CLASS COUNSEL.**


_____
Daniel A. Edelman
Julie Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)


*Counsel for Plaintiff and the Settlement Class*


**DEFENDANT**
*Xspire Pharma, LLC.*
By: _____

Its: _____

Dated: _____


**DEFENDANT**
*Gentex Pharma, LLC*

By: _____

Its: _____

Dated: _____


**DEFENDANT**
*Wraser LLC*

By: _____

Its: _____

Dated: _____


**DEFENDANT'S COUNSEL**


_____
Eric. L. Samore
John C. Ochoa
SmithAmundsen LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312-894-3200

19

**PLAINTIFF**
*Glen Ellyn Pharmacy, Inc.*

By:_____

Its:_____

Dated:_____


**PLAINTIFF**
*Handicapable, Inc. d/b/a Medicine to Go Pharmacies*

By:_____

Its:_____PRESIDENT_____

Dated:_____3/29/21_____


**SETTLEMENT CLASS COUNSEL.**

_____

Daniel A. Edelman
Julie Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)


*Counsel for Plaintiff and the Settlement Class*

**DEFENDANT**
*Xspire Pharma, LLC.*

By:_____

Its:_____

Dated:_____


**DEFENDANT**
*Gentex Pharma, LLC*

By:_____

Its:_____

Dated:_____


**DEFENDANT**
*Wraser LLC*

By:_____

Its:_____

Dated:_____


**DEFENDANT'S COUNSEL**

_____

Eric. L. Samore
John C. Ochoa
SmithAmundsen LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312-894-3200

19

**PLAINTIFF**
*Glen Ellyn Pharmacy, Inc.*

By:_____

Its:_____

Dated:_____


**PLAINTIFF**

By:_____

Its:_____

Dated:_____


**SETTLEMENT CLASS COUNSEL.**

x_____
(Julie Clark)

Daniel A. Edelman
Julie Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)


*Counsel for Plaintiff and the Settlement
Class*


**DEFENDANT**
*Xspire Pharma, LLC*
By:_____

Its: _President_____

Dated: _3-24-2021_____


**DEFENDANT**
*Gentex Pharma, LLC*

By:_____

Its: _President_____

Dated: _3-24-2021_____


**DEFENDANT**
*Wraser LLC*

By: _Heath Wray_____

Its: _President_____

Dated: _3-24-2021_____


**DEFENDANT'S COUNSEL**


Eric. L. Samore
John C. Ochoa
SmithAmundsen LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
312-894-3200

19

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT:**

GLEN ELLYN PHARMACY, INC *v.* XSPIRE PHARMA, LLC
*d/b/a* Saver Express; and GENTEX PHARMA, LLC WRASER, LLC
Case No. 19 C 5919

**THIS IS A NOTICE OF A SETTLEMENT OF A CLASS ACTION LAWSUIT.**
**THIS IS <u>NOT</u> A NOTICE OF A LAWSUIT AGAINST YOU.**

**YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LAWSUIT. PLEASE READ THIS NOTICE CAREFULLY FOR INFORMATION ABOUT THE LAWSUIT, THE SETTLEMENT, AND YOUR LEGAL RIGHTS.**

**I.       THE LAWSUIT:** Glen Ellyn Pharmacy, Inc. ("Plaintiff") sued Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC (collectively, "Defendants") alleging that Plaintiff received an unsolicited fax advertisement promoting Defendants' goods or services that did not contain a proper opt out notice. Plaintiff alleged that these faxes violated the Telephone Consumer Protection Act ("TCPA"), the Illinois Consumer Fraud Act ("ICFA") and common laws of conversion and trespass to chattels. Defendants deny these allegations and have raised certain defenses, but agreed to settle to avoid the expense, burden, and uncertainty of further litigation.

**II.      WHO IS INCLUDED:** Defendants' records show that you were sent one or more faxes from Defendants and may be included in the Settlement. Specifically, the Court certified a "Settlement Class" of: all persons and entities who were successfully sent faxes by or on behalf of Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC on or about August 4, 2019, promoting the commercial availability or quality of their goods or services which did not contain an opt out notice as described in 47 U.S.C. § 227

**III.     THE PROPOSED SETTLEMENT:** Defendants have agreed to fund an $800,000.00 Settlement Fund.  Before making payments to Settlement Class members, the Settlement Fund will be used to pay notice and administrative expenses not to exceed $30,000.00, an incentive award to the participating Plaintiffs (in an amount not to exceed $10,000.00) and attorneys' fees and costs (an amount not to exceed $256,666.67 which is 1/3 of the Net Settlement Fund). Settlement Class Counsel will file a Petition for Attorney's Fees by DATE, 2021. Your share of the Settlement Fund depends on how many members of the Settlement Class submit valid claims. This notice is being sent to approximately 8,123 Settlement Class members. Participating Settlement Class who submit a valid claim form will receive a *pro rata* distribution of the Net Settlement Fund per unique fax number.

**IV.     WHO REPRESENTS YOU:** The Court appointed Daniel A. Edelman and Dulijaza (Julie) Clark from Edelman, Combs, Latturner, & Goodwin, LLC to represent the Settlement Class as Class Counsel.

**V.       YOUR LEGAL RIGHTS AND OPTIONS: (1) Submit a Claim Form**. You must complete and submit the attached Claim Form by [DATE, 2021] to receive a payment. The value of each individual settlement payment cannot be determined until the Claims Deadline has passed and all claims have been verified. If your payment exceeds $599.99 you may be required to complete and submit a W-9. **(2) Exclude Yourself.** If you do not wish to participate in the Settlement you may exclude yourself from it by [DATE, 2021] by sending (via US Mail) a letter to Class Counsel at Edelman, Combs, Latturner & Goodwin, LLC, 20 S. Clark Street, Suite 1500, Chicago, IL 60603, fax: (312) 419-0379, or the Class Administrator, *Glen Ellyn Pharmacy, Inc. v. Xspire, LLC, et al,* Class Administrator, P.O. Box xxxx, City, ST xxxx-xxxx,. The Notice of Exclusion must state your name or your company's name, address, the fax number to which you were sent the fax, the case name and number, and a signed statement providing that: "I hereby request that I be excluded from the proposed Settlement Class in the Litigation.". If you exclude yourself from the Settlement you will not receive a payment and you will not release any claims against Defendants.  Your request for exclusion must be postmarked by [DATE, 2021] to be valid. **(3) Object.** If you do not exclude yourself, you can file an objection, either on your own or through an attorney, explaining why you think the Court should not approve the settlement. The objection must contain the case name and number; your name and address; the fax number to which you were sent the fax; a statement of your objection; an explanation of the legal and factual basis for the objection; and documentation, if any, to support your objection. The objection must be filed by [DATE, 2021] with (1) the Clerk of the United States District Court, Northern District of Illinois, 219 S. Dearborn, Chicago, IL 60604; and sent to (2) Edelman, Combs, Latturner, & Goodwin, LLC (36440), 20 S. Clark St., Suite 1500, Chicago, IL 60603; and (3) John C. Ochoa, SmithAmundsen, LLC, 150 N. Michigan Ave., Suite 3300, Chicago, IL 60601. **(4) Do Nothing.** If you do nothing you will not receive a monetary recovery, but you will be bound by all the terms of the Settlement Agreement.

**VI.     WHAT AM I GIVING UP UNDER THE SETTLEMENT?** If the settlement becomes final, you will be releasing Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; Wraser, LLC; and all the Released Parties as defined in the Settlement Agreement from any claims you may have relating in any way to any unsolicited advertising faxes sent to you during the class period. The Released Claims are fully explained in the Settlement Agreement, available at www.edcombs.com and www.class-settlement.com.

**VII. FINAL APPROVAL HEARING:** The Court has scheduled a Final Approval Hearing before Judge John Robert Blakey on [DATE AND TIME] of the United States District Courthouse for the Northern District of Illinois at 219 S. Dearborn St., Chicago, IL 60604. You or your attorney may attend this hearing if you desire and request to address the Court regarding any matters relating to this Settlement.

**VIII. MORE INFORMATION:** More information is available at www.edcombs.com and www.class-settlement.com. You may also inspect the pleadings and other papers that have been filed in this case at the office of the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., 20th Floor, Chicago, IL 60604 or through PACER. If you have questions about this notice or the proposed settlement, you may contact Settlement Class Counsel.

**THE COURT AND THE DEFENDANTS CANNOT PROVIDE INFORMATION.**

**CLAIM FORM**
**_GLEN ELLYN PHARMACY, INC v. XSPIRE PHARMA, LLC, et al LLC_**
**_Case No. 19 C 5919 (N.D. Ill.)_**
**TO RECEIVE A PAYMENT UNDER THIS SETTLEMENT AGREEMENT, THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE DATE, 2021 TO THE FOLLOWING:**

**CLASS ADMINISTRATOR**
**ADDRESS**
**CITY, STATE ZIP CODE**

IF YOU DO NOT SUBMIT A COMPLETED CLAIM FORM BY THE DATE INDICATED YOU WILL NOT RECEIVE A PAYMENT UNDER THIS SETTLEMENT. THE VALUE OF EACH INDIVIDUAL SETTLEMENT PAYMENT CANNOT BE DETERMINED UNTIL THE CLAIMS DEADLINE HAS PASSED AND WILL BE BASED ON, AMONG OTHER THINGS, THE TOTAL NUMBER OF CLAIMS RECEIVED.

**INSTRUCTIONS**: You must provide all required information below and sign the claim form and submit online or mail the claim form. You may be required to submit a W-9 form if the value of your claim exceeds $599.99. If you are required to submit a W-9 form and do not do so, the settlement administrator will deduct tax withholding from your recovery.

Please print or type the following information:
NAME OF PERSON OR ENTITY THAT SUBSCRIBED TO THE FAX LINE (a subscriber is the person or entity that maintained the account with the telecommunications company):

**Company Name**

**Contact Name**

| Last |
| First |

**Address:**

| Line 1: |
| Line 2: |
| City/St/Zip |

**Day Time Phone (area code-number):**

| Telephone | | | | - | | | | - | | | |

**Fax Number** at which you received a fax from Defendants (area code-number):

| Fax | | | | - | | | | - | | | |

Verification:
I submit that the foregoing information is true and correct to the best of my knowledge, information and belief.

_____ Date: _____

Signature

_____

Print name and title

**IT IS YOUR RESPONSIBILITY TO KEEP A CURRENT ADDRESS**
**ON FILE WITH THE CLASS ADMINISTRATOR.**

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GLEN ELLYN PHARMACY, INC.,    )
on behalf of plaintiff and    )
the class members defined herein,    )
    )
    Plaintiff,    )    19 cv 5919
    v.    )
    )    Hon. John Robert Blakey
XSPIRE PHARMA, LLC, doing business as    )
Saver Express;    )
GENTEX PHARMA, LLC;    )
WRASER, LLC;    )
and JOHN DOES 1-10,    )
    )
    Defendants.    )

**[DRAFT] ORDER GRANTING MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

The Motion of Plaintiff Glen Ellyn Pharmacy, Inc. ("Plaintiff") for Preliminary Approval

of Class Action Settlement and Notice to the Class, which is unopposed by Defendants Xspire

Pharma, LLC, doing business as Saver Express; Gentex Pharma, LLC; and Wraser, LLC

("Defendants") came on for hearing on [**DATE, 2021**].

Having considered Plaintiff's moving papers, the signed Settlement Agreement (the

"Settlement Agreement") attached as <u>Appendix A</u> to Plaintiff's Motion for Preliminary Approval,

all other evidence submitted concerning Plaintiff's motion, and being duly advised in the premises,

and good cause having been shown, the Court hereby finds that:

(a)    The settlement proposed in the Settlement Agreement has been negotiated in good

faith at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the

best interests of the Settlement Class (as defined below).

(b)    The Class Notice (as described in the Settlement Agreement) fully complies with

Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable

under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Litigation.

(c)     With respect to the Settlement Class, this Court finds that, for settlement purposes only, certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3). This Court finds that members of the Settlement Class will receive notice of the settlement through the notice program described below.

(d)     This Court finds that the Class Notice described below constitutes the best notice practicable under the circumstances and fully complies with Federal Rule of Civil Procedure 23(c)(2)(B).

**IT IS THEREFORE ORDERED THAT:**

1.     The settlement proposed in the Settlement Agreement has been negotiated in good faith at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the factual, legal, practical and procedural considerations raised by this case.

2.     The following class (the "Settlement Class") is preliminarily certified solely for the purpose of settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> all persons and entities who were successfully sent faxes by or on behalf of Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC on or about August 4, 2019, promoting the commercial availability or quality of their goods or services which did not contain an opt out notice as described in 47 U.S.C. § 227.

The Court makes a preliminary finding that this action satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23(a) and (b). The Settlement Class as defined in the Settlement Agreement is so numerous that joinder of all members is not practicable, there are questions of law and fact common to the Settlement Class, the claims of the Class Representatives

are typical of the claims of the Settlement Class, and the Class Representatives will fairly and adequately protect the interests of the Settlement Class. Questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.      The Court preliminarily appoints Plaintiff Glen Ellyn Pharmacy, Inc. and Medicine to Go Pharmacies, Inc. as Representatives of the Settlement Class and finds that they meet the requirements of Fed. R. Civ. P. 23.

4.      The Court preliminarily appoints the following lawyers as Settlement Class Counsel and finds that they meet the requirements of Fed. R. Civ. P. 23:  Daniel A. Edelman and Dulijaza (Julie) Clark of Edelman, Combs, Latturner and Goodwin, LLC, 20 S. Clark Street, Suite 1500, Chicago, Illinois 60603.

5.      If (i) the Settlement Agreement is terminated pursuant to its terms; (ii) the Settlement Agreement, the Preliminary Approval Order, and the Final Approval Order do not for any reason become effective; or (iii) the Final Approval Order is reversed, vacated, or modified in any material respect which is not agreeable to all Parties, then (a) all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including without limitation the certification of the Settlement Class and all other relevant portions of this Order; (b) this case shall proceed as though the Settlement Class had never been certified; and (c) no reference to the prior Settlement Class, or any documents related thereto, shall be made for any purpose.  If the settlement does not become final in accordance with the terms of the Settlement Agreement, then the Final Approval Order shall be void and shall be deemed vacated.  Defendants retain the right to oppose class

certification if the settlement is vacated, and the doctrines of res judicata, collateral estoppel or law of the case shall not be applied.

6.     The Settlement Class Administrator shall give notice of the settlement, its terms, the right to opt out, appear and the right to object to the settlement as set forth in the Settlement Agreement.  The Settlement Agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Fed. R. Civ. P. 23.  That plan is approved and adopted.

7.     The Settlement Class Administrator is Class-Settlement.Com**.**

8.     The form of notice that the Settlement Class Administrator will provide is attached as <u>Exhibit 1</u> to the Settlement Agreement.  By [**DATE, 2021**], Class Counsel is ordered to direct the Settlement Class Administrator to mail and fax the Notice and Claim Form to the Settlement Class Member via first class mail to the address, if any, for the Settlement Class Member contained in the Fax List. The Claims Administrator shall take reasonable steps to attempt to forward any notices it mails to Settlement Class Members which are returned with a forwarding address. The Settlement Class Administrator shall also create a website that allows for electronic submission of claim forms and the website may post the notice, claim form, this Order, Plaintiff's Fee Petition and the Settlement Agreement (excluding exhibits).  This notice program fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the proposed settlement of this lawsuit.  The Court finds that no other notice is necessary.  The Administrator and/or Settlement Class Counsel shall provide the Notice and/or the Claim Form to Class Members who call to request it and will also post the notice and the Settlement Agreement (excluding exhibits) on their firm's website.

9.      To effectuate the settlement, the Court establishes the following deadlines for the events set forth in the Settlement Agreement and directs the Parties to incorporate the deadlines in the Notice and Claim Form:

(a)      Claim Forms shall be returned by Class Members to the Settlement Class Administrator online or by mail, postmarked on or before **[DATE, 2021]**.  Claims not submitted by this date shall be barred.

(b)      Objections of Class Members or any appearance of an attorney on behalf of a Class Member shall be filed in this Court and served by mail postmarked to Settlement Class Counsel and Defendants' Counsel on or before **[DATE, 2021]**, or shall be forever barred.  Each objection must contain the following information: (i) the objector's name (or business name, if the objector is an entity), and address; (ii) the fax number to which the fax was sent; (iii) a statement of the objection to the Settlement Agreement; (iv) an explanation of the legal and factual basis for the objection; and (v) documentation, if any, to support the objection.

(c)      All memoranda filed by any Class Member in connection with objections must be filed in this Court and served on Class Counsel and counsel for Defendants by mail postmarked on or before **[DATE, 2021]**, or shall be forever barred.

(d)      Requests by any Class Member to opt out of the settlement must be served by mail postmarked to Settlement Class Counsel or the Settlement Claims Administrator on or before **[DATE, 2021]**, or shall be forever barred.  A notice of intention to opt out must contain the following information: (a) the Class Member's name or company's name, address, the fax number to which the fax was sent, the case name and number; and (b) a

statement to the effect that the Class Member does not want to participate in the settlement and waives all rights to any benefits of the settlement.

10.     Defendants shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), no later than [**DATE, 2021**].

11.     Settlement Class Counsel shall file with the Court a list of the individual members of the Settlement Class seeking exclusion by [**DATE, 2021**].

12.     The final hearing to determine whether the settlement is fair, reasonable, and adequate, and whether it should be approved by the Court, will be conducted on [**DATE, 2021  at  TIME  a.m.**]

13.     All papers in support of the Settlement Agreement shall be filed no later than [**DATE, 2021**].  Any responses to objections shall be filed with the Court on or before [**DATE, 2021**].  There shall be no replies from objectors.  The parties shall make any *cy pres* recommendations by [**DATE, 2021**].

14.     The Court may, for good cause, extend any of the deadlines set forth in this Order or adjourn or continue the final approval hearing without further notice to the Settlement Class.

15.     Costs associated with notice, claims administration and distribution of settlement checks shall come from the Settlement Fund.  Defendants shall advance costs of notice and administration from the Settlement Fund (not to exceed $30,000.00) to the Settlement Class Administrator or Settlement Class Counsel within five (5) days after entry of this Order. Defendants shall provide the Class List in MS Word or Excel format to Settlement Class Counsel and/or the Settlement Class Administrator within five (5) days after this Order is entered.

16.     Class Counsel to file their fee petition by [**DATE, 2021**], at least thirty (30) days prior to the deadline for Class Members to submit objections.

17.     Defendant or persons acting on its behalf, shall within three days prior to the final approval hearing, deposit the Settlement Fund (less any amounts advanced for notice and administration costs) into the Client Trust Account of Defendant's Counsel. Defendant's Counsel shall notify Class Counsel in writing on or before the date of the final approval hearing that the Settlement Fund (less any amounts advanced for notice and administration costs) has been deposited into its Client Trust Account.

ENTERED:

Dated: _____              _____

                                            United States District Judge

# **EXHIBIT 3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GLEN ELLYN PHARMACY, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 19 cv 5919 |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| XSPIRE PHARMA, LLC, doing business as | ) | |
| Saver Express; | ) | |
| GENTEX PHARMA, LLC; | ) | |
| WRASER, LLC; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## [PROPOSED] FINAL ORDER OF APPROVAL

On [**DATE, 2021**], this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the settlement between Plaintiff Glen Ellyn Pharmacy, Inc. ("Plaintiff"), on its own behalf and on behalf of the Settlement Class (as defined below), and Defendants Xspire Pharma, LLC, doing business as Saver Express; Gentex Pharma, LLC; and Wraser, LLC ("Defendants"), as memorialized in the Settlement Agreement (the "Settlement Agreement").

On [**DATE, 2021**], the Court held a fairness hearing (the "Final Approval Hearing"), for which members of the Settlement Class had been given appropriate notice and were invited to appear, including those with any objections. An opportunity to be heard was given to all persons requesting to be heard in accordance with the Preliminary Approval Order. Having considered the Parties' Settlement Agreement, Plaintiff's Memorandum in Support of Final Approval of the Class Action Settlement, Plaintiff's Fee Petition and all other evidence submitted, and good cause having been shown,

**IT IS HEREBY ORDERED THAT:**

1.      This Court has jurisdiction over Plaintiff, Defendants, members of the Settlement Class, and the claims asserted in the Litigation.

2.      The Settlement Agreement was entered into in good faith following arm's length negotiations and is non-collusive.

3.      This Court grants final approval of the Settlement Agreement, including, but not limited to, the releases therein, and finds that the settlement is in all respects fair, reasonable, and adequate, and in the best interests of all those affected by it.  The Parties and their counsel shall implement and consummate the Settlement Agreement according to its terms and provisions.  The Settlement Agreement is binding on, and has res judicata and preclusive effect in all pending and future lawsuits or other proceedings brought or maintain by or on behalf of Plaintiff and all other Settlement Class Members who have not opted out of the Settlement.  Any pending actions addressing the same conduct and harm that is the subject of this Settlement Agreement shall be terminated based on the entry of this Final Approval Order.  Any timely objections that were filed have been considered and are overruled.  Accordingly, all members of the Settlement Class who have not opted out are bound by this Order finally approving the Settlement.

<u>Class Certification</u>

4.      On [**DATE, 2021**], pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.      The following Settlement Class is now finally certified for purposes of settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

>      all persons and entities who were successfully sent faxes by or on
>      behalf of Xspire Pharma, LLC, d/b/a Saver Express; Gentex

2

Pharma, LLC; and Wraser, LLC on or about August 4, 2019, promoting the commercial availability or quality of their goods or services which did not contain an opt out notice as described in 47 U.S.C. § 227.

6.     The Court finds that certification solely for purposes of settlement is appropriate in that: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff will fairly and adequately protect the interests of the class; (e) Edelman, Combs, Latturner & Goodwin, LLC is adequate class counsel; and (f) a class action is the superior method for the fair and efficient adjudication of this controversy.

7.     Glen Ellyn Pharmacy, Inc. and Medicine to Go Pharmacy, Inc. are designated as representatives of the Settlement Class.

8.     Dulijaza (Julie) Clark and Daniel A. Edelman of Edelman, Combs, Latturner and Goodwin, LLC are appointed as Class Counsel.

## Class Notice

9.     The Class Notice (as described in the Settlement Agreement) fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Litigation.  The Court has approved the forms of notice to the Settlement Class.

10.    With respect to the Settlement Class, this Court finds that certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3).  Notice was given by facsimile and first-class U.S. Mail to each Settlement Class Member whose identity could be identified through reasonable effort.  Settlement Class Counsel also posted the Settlement Agreement

3

(without exhibits) and Notice on its firm website, www.edcombs.com. The Class Notice, Plaintiffs' Fee Petition and Settlement Agreement were also posted on www.class-settlement.com.

11.     A total of _____ valid claim forms were submitted.

12.     Plaintiff submitted the declaration of _____ to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Notice") was sent to the members of the Settlement Class as ordered in the Preliminary Approval Order. The Court finds that the Notice and the process by which it was sent: (1) fully complied with the requirements of Rule 23(c)(2)(B) and due process; (2) constituted the best notice practicable under the circumstances; (3) constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Settlement Class of the pendency of this Litigation, their right to object to or exclude themselves from the proposed Agreement and to appear at the Final Approval Hearing; and (4) constituted due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

**Objections and Opt-Outs**

13.     The following _____ members of the Settlement Class filed objections to the settlement: [**identify objectors**].  The Court has considered each of these objections carefully and has overruled them.   None of these objections raised a valid concern about the Settlement Agreement.

14.     The following persons have requested exclusion and are hereby excluded from the Class and this case: _____.

**Class Compensation**

15.     In accordance with the terms of the Settlement Agreement, Defendants Xspire Pharma, LLC, d/b/a Saver Express; Gentex Pharma, LLC; and Wraser, LLC shall provide a total of eight hundred thousand dollars ($800,000.00) to create a Settlement Fund, less any costs

4

advanced for notice and administrative expenses pursuant to the Settlement Agreement. No portion of the Settlement Fund shall revert back to Defendants.

16.     As set forth in the Settlement Agreement, each member of the class who has submitted a timely and otherwise valid claim will be entitled to one pro rata share of amounts remaining in the Settlement Fund subsequent to deductions for costs of notice and administration expenses; attorneys' fees; and class representative awards to Glen Ellyn Pharmacy, Inc. and Medicine to Go Pharmacy, Inc. Any money remaining from checks issued to claiming class members but not cashed shall be distributed in accordance with the terms of the Settlement Agreement. If, after all distributions to Settlement Class Members are complete, any funds remain in the Settlement Fund, those remaining funds shall be distributed to the following *cy pres* _____.

### Releases

17.     Upon entry of this Order Finally Approving the Settlement, all claims or causes of action of any kind by Plaintiff and Settlement Class Members who have not timely opted out or otherwise excluded themselves from the Settlement Class are forever barred and released pursuant to the terms of the releases set forth in Paragraph 11 of the Recitals and Definitions and Paragraph 13 of the Terms Section ¥ of the Settlement Agreement.

Settlement Class Counsel has waived, discharged and released the Released Parties, as defined in the Settlement Agreement, of and from any and all claims for attorney's fees, by lien or otherwise, for legal services rendered by
        Settlement Class Counsel in connection with the Litigation.

18.     This lawsuit is dismissed with prejudice as to Plaintiff and all members of the Settlement Class (except that the dismissal shall be without prejudice as to those persons identified above who submitted valid exclusions), and without fees or costs except as provided for in the Settlement Agreement.

5

### Award of Attorneys' Fees, Costs, and Incentive Award

19.     The Court has considered Class Counsel's application for attorneys' fees.  The Court awards Class Counsel the sum of $\underline{\hspace{3cm}}$ as an award of attorneys' fees to be paid from the Settlement Fund, and finds this amount of fees is fair and reasonable.

20.     The Court grants Class Counsel's request for incentive awards to the class representatives and awards $\underline{\hspace{3cm}}$ to Glen Ellyn Pharmacy, Inc. and $\underline{\hspace{3cm}}$ to Medicine to Go Pharmacy, Inc.   The Court finds that these payments are justified by the Class Representatives' service to the Settlement Class.   These payments shall be made from the Settlement Fund.

### Other Provisions

21.     The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

22.     The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

23.     Neither the Settlement Agreement, the Preliminary Approval Order, this Order Finally Approving the Settlement, nor any of their provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order, Order Finally Approving the Settlement), negotiations, or proceedings relating in any way to the settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind by any person, including Defendants, and shall not be offered or received in evidence in this or any other action or proceeding except in an action brought to enforce the terms of the Settlement Agreement or except as may be required by law or court order.

6

24. The Settlement Class Administrator shall distribute the Net Settlement Fund to the Settlement Class Members in accordance with the provisions of this Order and the parties' Settlement Agreement, within thirty (30) days following the Effective Date as more fully set forth in the Settlement Agreement.

25. Settlement Class Counsel or the Settlement Class Administrator shall make the *cy pres* payments to _____ no earlier than sixty (60) days after expiration of the void date on the Settlement Class Members' checks.

26. Class Counsel and/or the Class Administrator shall file an affidavit of final accounting of the settlement by [**DATE, 2021**].

27. A hearing on the final accounting of the settlement and for entry of a dismissal order is set for [**DATE, 2021 _____**]

28. The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order.

ENTER:

Dated: _____

_____
United States District Judge

# APPENDIX B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| GLEN ELLYN PHARMACY, INC., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 19 cv 5919 |
| v. | ) | |
| | ) | Hon. John Robert Blakey |
| XSPIRE PHARMA, LLC, doing business as | ) | |
| Saver Express; | ) | |
| GENTEX PHARMA, LLC; | ) | |
| WRASER, LLC; | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

Daniel A. Edelman declares under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1.      Edelman, Combs, Latturner & Goodwin, LLC, has 6 principals, Daniel A. Edelman, Cathleen M. Combs, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020.

2.      **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School.  From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases).  In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982.  From the end of 1985 he has been in private practice in downtown Chicago.  Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions.  He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ.  2020 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 5, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008);  *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal Educ. 2008,

1

2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing: Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act: Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others. Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature. He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois. He is a member of the Northern District of Illinois trial bar.

3.     **Cathleen M. Combs** is a 1976 graduate of Loyola University Law School. From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law. She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993. Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012. Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010). Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002); *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000); *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995); *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014). She is a member of the Illinois bar and admitted to practice in the following courts: United States District Courts for the Northern,

2

Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals. She is a member of the Northern District of Illinois trial bar.

4.      **James O. Latturner** (retired 2020) is a 1962 graduate of the University of Chicago Law School. Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma. From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions. His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996). He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience. He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits. Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers. He is a member of the Northern District of Illinois trial bar.

5.      **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991). Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824, 2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917  (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345  (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, 94cv3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996). Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana. She is also a member of the Northern District of Illinois trial bar.

6.      **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A.,

3

1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) **;** *Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank*, 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens*, 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.*, 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.*, 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.*, 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.*, 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.*, 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

7.      **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.*, 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.*, 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.*, 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.*, 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.*, 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.*, 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.*, 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC*, 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC*, 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.*, No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

8.      **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.*, 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.*, 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.*, 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC*, 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

9.      **Associates**:

        a.      **David Kim** is a graduate of the University of Illinois (B.A., 2001, M.A., 2004) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., 2010).

4

b.     **Carly Cengher** is a graduate of the University of Oregon (B.A., 2011), the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019).  She is a member of the Illinois Bar.

c.     **Samuel Park** is a graduate of University of Illinois Urbana-Champaign (B.A., 2012) and University of California, Irvine School of Law (J.D., 2018). He is a member of the Illinois Bar.

d.     **Kasun Wijegunawardana** is a graduate of Cornell College (B.A. 2010) and Loyola University Chicago Law School (J.D., 2019).

10.     The firm also has a dozen legal assistants and support staff.

11.     Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

12.     **Collection practices:**  The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual.  Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd  514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317  (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.,* 679 F.3d 637 (7th Cir.  2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006);  *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014),  later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion,  1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir.,  June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion,  1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion,  297 F.R.D. 42 (E.D.N.Y.  2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235,  2013 WL 1858587,  2013 U.S. Dist. LEXIS 62648

(N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, , 949 F. Supp. 2d 807 (N.D.Ill. 2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*, 955 F. Supp. 2d 825 (N.D.Ill. 2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008); *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008); *Martin v. Cavalry Portfolio Servs., LLC*, 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841, 1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 98cv6403, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S. Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

13.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act. Mr. Edelman argued it before the Supreme Court and Seventh Circuit. *Avila v. Rubin* and *Nielsen v. Dickerson* are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements. *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

14.     **Debtors' rights**. Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied) (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 WL LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.,* 05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

15.     **Telephone Consumer Protection Act.** The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include: *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL

6

2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*, 07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

16.      The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act.  Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014).  The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

17.      **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

18.      Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.   *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

19.      **Class action procedure:**  Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness),  and *Gordon v. Boden,* 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

20.      **Landlord-tenant:**  The firm has brought more than 20 class actions against landlords to enforce tenants' rights.  Claims include  failing to pay interest on security deposits or commingling security deposits.  Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*,  344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

21.      **Mortgage charges and servicing practices:**  The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices.  These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation.  Decisions in the firm's mortgage cases include: *Hamm*

*v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Johnson v. Thomas*, 342 Ill.App.3d 382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n*, 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

22.     The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

23.     The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

24.     **Bankruptcy:** The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

25.     **Automobile sales and financing practices:** The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.     Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.     Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, 955 F.Supp. 938 (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

8

      c.      Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

      d.      Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

      e.      Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

      f.      Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

26.     These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

27.     **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied,* 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.,* 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

28.     **Other consumer credit issues:** The firm has also brought a number of other

Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

a.     Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

b.     The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

c.     Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995). *Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

d.     Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

e.     Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1992).

29.     **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

30.     *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

31.     **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685 (N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

32.     Some of the other reported decisions in our cases include:  *Elder v. Coronet Ins. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R.  870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.,* 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.,* 973 F.Supp.2d 905 (N.D.Ill. 2013).

33.     *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action.  *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois.

> /s/ Daniel A. Edelman
> Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)